Harry S. Christenson, J.
This is an action to recover for the breach of an agreement, between plaintiff, a supplier of coin-operated selective-music service, and defendant, an operator of a bar and grill. The agreement covered the period from April 15, 1953 to April 14, 1957, during which time the music service was to be furnished.
The facts are uncontroverted, that the equipment was installed and the music service satisfactorily furnished by the supplier for a period of approximately 17 months; also, that on September 2, 1954, defendant sold his business at the location where he had operated, and defendant’s vendee discontinued the music service, requiring the supplier to remove his equipment.
*1063 The agreement provides for the payment of 50% of the weekly gross receipts to the operator, less the sum of $5 per week, and for the payment of 50% of the weekly gross receipts to the supplier, plus the sum of $5 per week.
Defendant denies a breach of the agreement, and he affirmatively defends, on the ground that the agreement grants to the supplier a license terminable at will at the option of the operator. Further, he contends, it operates as an unlawful restraint upon the sale of his business, and, consequently, deprives him of an inherent right to earn his livelihood; also, on the reverse side of the printed agreement form, there are conditions listed, which were unknown to defendant, and not part of their agreement.
The agreement, signed by the parties, must be considered in its entirety, in the absence of fraud or concealment on the part of the person who prepared the instrument. The “ Conditions and Agreements ” here covered the entire reverse side of the printed form. One of the items contained thereon, and to which reference is made on the face of the agreement, is “ EXHIBIT A”, which lists the equipment to be furnished. I find no evidence of fraud in its execution, and neither effort of concealment on the part of the supplier, nor a lack of awareness of its terms by the operator.
In my opinion, the agreement which plaintiff and defendant executed is a license coupled with a contract. A ‘ ‘ license ’ ’ grants no interest in the property involved, but rather the privilege to do one or more acts upon the property, without possessing any interest therein. (Reeve v. Duryee, 144 App. Div. 647.)
A license is revocable, even though a consideration has been paid therefor or money has been expended on the faith of the license. (Wiseman v. Lucksinger, 84 N. Y. 31; Kommer v. Daly, 104 App. Div. 528.) Where, however, the authority is given in pursuance of a contract for a definite term, upon a valuable consideration, a breach of the contract gives rise to a personal action. While the right to injunctive relief may not follow from its termination, it is the basis for the breach of the contract, which created it. (Schusterman v. C & F Caterers, 192 Misc. 564; United Merchants Realty & Improvement Co. v. American Billposting Co., 71 Misc. 457.)
The question of restraint of trade and the hardship imposed upon defendant arise by reason of paragraph “ 4 ” of “ Conditions and Agreements ”, which reads as follows: “4. The second party shall not dispose of or assign its interest in this agreement or the equipment furnished pursuant to it without the prior *1064 written consent of first party. The second party shall not sell or otherwise dispose of the "business operated by him at the location where said equipment is installed unless the purchaser of said business agrees in writing with the first party to continue this agreement to its termination in accordance with its terms.”
The general principle of restrictive covenants is set forth in Simons v. Fried (802 N. Y. 328) where the court said: “ There is a public policy which in general holds competent contracting parties to bargains made by them with their eyes open. There is, however, an antagonistic public policy which proscribes any contract that would bring about an unreasonable restriction of the liberty of a man to earn his living or exercise his calling ”.
The determining factor, fundamentally, is the reasonableness of the restraint. It is evident that the cases of employer-employee' relationship have set a higher standard as the test of reasonableness. The employer is in the superior position at the time of the hiring and may drive a hard bargain. The duration and scope of the restraint and the nature of knowledge acquired by an employer are all carefully scrutinized. Generally, restraints which would deprive a person of his livelihood, in such instances, have been held contrary to public policy, void, ánd unenforcible. (Clark Paper & Mfg. Co. v. Stenacher, 236 N. Y. 312; Corpin v. Wheatley, 227 App. Div. 212; Dockstader v, Reed, 121 App. Div. 846.)
In the sale of a business, with restrictive covenants not to compete, a lesser standard has been established and less severity exercised in the test of reasonableness. (Diamond Match Co. v. Roeber, 106 N. Y. 473.) It seems that the authorities, for the most part, agree that there is a distinction between a covenant which is ancillary to the sale of a business, and one which is ancillary to a contract of employment. Although the instant agreement does not immediately fall into either category, I believe it should be considered more analogous to the sale of a business.
“ There may lawfully be a partial restraint of trade, sufficient to protect the interests of a party and not so great as to interfere with the interests of the public, in a contract for the sale of property.” (Stemmerman v. Kelly, 150 App. Div. 735, 738.) It follows that the same rule would apply to the sale of a service.
The restraint here is not unreasonable in scope or severity; it is for the duration of the contract period only. Defendant had a right to sell, subject to his buyer’s written acceptance of the terms and conditions of this agreement between plaintiff and defendant. I believe these restrictions are no more severe *1065 than conditions commonly included in deeds, which have long been held not to controvert public policy. (See Hodge v. Sloan, 107 N. Y. 244.)
Defendant entered into the agreement without coercion or duress. That the provisions of the agreement might prove troublesome in disposing of his business, does not relieve him of the requirement ensuring the continuance of this service in a subsequent sale.
Plaintiff has established damages in excess of the jurisdictional, $2,000 limit, according to the formula set forth in the agreement between the parties, but has demanded judgment in his complaint for the sum of $2,000. Therefore, judgment is granted in the amount of $2,000, with interest from the 2d day of September, 1954, together with costs, to plaintiff Melodies, Inc., against defendant Carmelo Mirabile.